IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHILADELPHIA INDEMNITY             :
INSURANCE COMPANY,                 :
                                   :
          Plaintiff,               :
     v.                            :     3:21-CV-1236
                                   :     (JUDGE MARIANI)
TINA YAP, VIRGINIA CHAN, and       :
ADVENTURE SPORTS, INC.,            :
                                   :
          Defendant.               :

## MEMORDANDUM OPINION

### I.   INTRODUCTION

Presently before the Court are three pending motions: Motion to Transfer Venue

Pursuant to 28 U.S.C. §1404(a) or in the Alternative to Dismiss Pursuant to the Doctrine of

*Forum Non Conveniens* (Doc. 2) by Defendant Virginia Chan, Motion to Remand (Doc. 6)

by Plaintiff Philadelphia Indemnity Insurance Company, and Motion to Transfer Venue

Pursuant to 28 U.S.C. §1404(a) or in the Alternative to Dismiss Pursuant to the Doctrine of

*Forum Non Conveniens* (Doc. 8) by Defendant Tina Yap, as *Administratix Ad*

*Prosequendum* of the Estate of Cheeyan Yap.  Although it appears that all parties contend

that the Middle District of Pennsylvania is not the proper venue for this case, the Court will

deny all three Motions and retain jurisdiction for the reasons set forth below.

## II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Cheeyan Yap and Virginia Chan rented a canoe from Adventure Sports, Inc. on May 25, 2018, in Marshall Creek, Monroe County, Pennsylvania. (Doc. 6-1 at 12). While canoeing on the Delaware River, Ms. Chan and Mr. Yap's canoe capsized, and both Ms. Chan and Mr. Yap fell into the water on the New Jersey side of the Delaware River. (*Id.* at 17). Ms. Chan was rescued, but Mr. Yap drowned in the Delaware River and his body was not recovered until June 2, 2018. (*Id.*).

The underlying action to which the above-captioned action is related was filed in the United States District Court for the District of New Jersey on February 26, 2019. (Doc. 6-1 at 16). In that case, Tina Yap, Mr. Yap's wife, individually and as *Administratix Ad Prosequendum* of the Estate of Cheeyan Yap (hereinafter referred to as "Yap") filed a civil complaint against Adventure Sports seeking damages for the drowning death of her husband, Mr. Yap. (*Id.* at 16). The complaint was later amended to assert a negligence claim against Ms. Chan. (*Id.*).

The above-captioned action was originally filed in the Court of Common Pleas of Monroe County, Pennsylvania on June 21, 2021. (Doc. 1 at ¶ 1). Plaintiff Philadelphia asserts 4 claims: declaratory relief against Yap (Count I); declaratory relief against Chan (Count II); breach of contract against Yap (Count III); and breach of contract against Chan (Count IV). (Doc. 6-1 at 22-31). Although no claims are asserted against it, Philadelphia named Adventure Sports as a defendant in this action. On July 14, 2021, Chan removed

2

this matter to the United States District Court for the Middle District of Pennsylvania based on diversity jurisdiction.  (*See* Doc. 1).

The above-captioned matter relates to the contractual indemnity obligations that Philadelphia alleges Chan and Yap both entered into with Adventure Sports when they rented canoes from Adventure Sports on May 25, 2018.  (Doc. 6-1 at 12-13).  Among other things, the "Acknowledgement of Risks & Acceptance of Responsibility Release of Liability" section of the contract signed by Chan and Yap provides:

> I, for myself and on behalf of my heirs, assigns, personal representatives and the next of kin, HEREBY RELEASE, INDEMNIFY, AND HOLD HARMLESS, ADVENTURE SPORTS, their officers, officials, agents and/or employees, other participants, sponsoring agencies, sponsors, advertisers, and if applicable, owner and lessor of premises used for this activity ("releases"), WITH RESPECT TO ANY AND ALL INJURY, DISABILITY, DEATH, or loss or damage to person or property associated with my presence or participation, WHETHER ARISING FROM THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE, to the fullest extent permitted by law.

(Doc. 6-1 at 36).

Philadelphia issued a Commercial General Liability Policy to Adventure Sports with a $1,000,000 per occurrence limit.  (*See* Doc. 6-1 at 64-229).  Philadelphia has provided Adventure Sports with a defense in the underlying action.  (Doc. 6 at ¶ 14).  Philadelphia filed the instant action due to Chan and Yap's alleged "failure to assume the defense of Adventure Sports in connection with the Underlying Action," which has allegedly caused Philadelphia to have "incurred significant costs, expenses, and legal fees in connection with the defense of Adventure Sports in that Underlying Action."  (Doc. 6-1 at 21).  According to

3

Philadelphia, Chan and the Yap's "failure to acknowledge and assume the complete indemnity obligation in favor of Adventure Sports in connection with the Underlying Action" has created a possibility in which Plaintiff "may be called upon to indemnify Adventure Sports under the Philadelphia Policy relative to any adverse judgment or agreed settlement of the Underlying Action." (*Id.* at 21-22).

## III.   ANALYSIS

Pending before the Court are three motions: Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) or in the Alternative, to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens* by Defendant Chan (Doc. 2), Motion to Remand by Plaintiff Philadelphia (Doc. 6), and Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) or in the Alternative, to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens* by Defendant Yap (Doc. 8). Yap's Motion to Transfer "incorporates by reference ... the facts and legal arguments set forth in the Motion to Transfer Venue Pursuant to 28 U.S.C. 1404([a]) or in the Alternative to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens* filed on behalf of Defendant, Virginia Chan." (Doc. 8 at 1-2; Doc. 9 at 1). As such, the Court will consider Chan and Yap's Motions to Transfer together. The Court will first address Plaintiff Philadelphia's Motion to Remand.

### a.  *Motion to Remand*

Philadelphia makes two arguments in its Motion to Remand: (1) Adventure Sports' Pennsylvania citizenship defeats complete diversity and, because "Chan's removal is

4

predicated entirely on diversity jurisdiction," this case should be remanded for lack of subject matter jurisdiction; and (2) "this Court should decline to exercise jurisdiction over this declaratory judgment proceeding because it exclusively addresses state law issues and matters of local concern." (Doc. 7 at 1). Adventure Sports, a named defendant, filed a brief in support of Plaintiff's Motion to Remand (Doc. 27) in which it "incorporates by reference herein the Motion [to Remand] and supporting Memorandum of Law to Remand filed by Philadelphia Indemnity Insurance Company in connection with the above-captioned matter." (Doc. 27 at 1).

"Removal statutes are to be strictly construed, with all doubts to be resolved in favor of remand." *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (citing *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992)); *see also Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005) ("The statute governing removal, 28 U.S.C. § 1441, must be strictly construed against removal."). "It is now settled in this Court that the party asserting federal jurisdiction in a removal case bears the burden of showing, at all stages of litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citing *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392 (3d Cir. 2004)). The "removing party bears the burden of establishing federal jurisdiction." *A.S. Blue, Inc. v. One Beacon Ins. Co.*, 2013 WL 2317792, at *1 (citing *Mallalieu-Golder Ins. Agency, Inc. v. Executive Risk Indem., Inc.*, 254 F.Supp.2d 521, 523 (M.D.Pa. 2003)).

5

In removing the above-captioned matter to this court, Defendant Chan alleged jurisdiction is proper pursuant to 28 U.S.C. 1332 because there exists complete diversity and the amount in controversy is greater than $75,000.  (Doc. 1 at 2).  In its Motion to Remand, Plaintiff Philadelphia argues that complete diversity does not exist because both Plaintiff and Defendant Adventure Sports are citizens of Pennsylvania.  (*See generally* Doc. 6).  Defendant Chan asserts that Defendant Adventure Sports is a "nominal" party and its citizenship should not destroy diversity, while Plaintiff Philadelphia argues that Defendant Adventure Sports is an indispensable party and has an active interest in this action.

### i.  Alignment of the Parties

Philadelphia argues that Adventure Sports' "presence as a party defendant in this matter is vital to this litigation" and, because both Philadelphia and Adventure Sports are citizens of Pennsylvania, complete diversity does not exist and this matter should be remanded.  (Doc. 6 at 1).  In opposition, Chan and Yap invite the Court to realign Defendant Adventure Sports as a party plaintiff because the interests of Adventure are more properly aligned with that of Philadelphia.  (Doc. 17 at 11).  If Adventure Sports is realigned as a party plaintiff, there will be complete diversity among the parties.  Philadelphia opposes realignment on the grounds that, because Defendant Chan did not raise realignment as a ground for removal in the Notice of Removal, she cannot "assert new grounds as a basis of removal that were not pled in the Notice of Removal."  (Doc. 20 at 3).

For purposes of diversity, the parties' positioning "must be ascertained from the 'principal purpose of the suit,' … 'and the primary and controlling matter in dispute.'" *Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 68 (1941) (citations omitted); *see also Yakitori Boy, Inc. v. Starr Indem. & Liab., Co.*, 2019 WL 199904, at \*3 (E.D.Pa. January 14, 2019) (noting that "where party designations have jurisdictional consequences, a court must align the parties before determining jurisdiction." (internal citations and quotations omitted)). "In determining whether there is the necessary 'collision of interests,' the court must look beyond the pleadings and arrange the parties according to their sides in the dispute." *Employers Ins. of Wasau v. Crown Cork & Seal Co., Inc.*, 905 F.2d 42, 45 (3d Cir. 1990) (quoting *Indianapolis*, 314 U.S. at 69).  When ruling on whether realignment is proper, the court must "determine the issue of antagonism on the face of the pleading and by the nature of the controversy."  *Smith v. Sperling*, 354 U.S. 91, 96 (1957); *see also Employers Ins.*, 905 F.2d at 46 ("A determination of whether there is a collision of interests must be based on the facts as they existed at the time the action was commenced.").

Here, Yap contends "the principal purpose of the lawsuit is to obtain a judgment that defendants Estate of Yap and/or Chan are required to defend and indemnify Philadelphia's insured, Adventure Sports." (Doc. 17 at 11).  Philadelphia does not deny Yap's contention regarding the true primary purpose of this suit; rather, Philadelphia relies on its procedural argument that Yap cannot raise new grounds for removal that were not included in the Notice of Removal.  (Doc. 20 at 1-3).

7

Contrary to Philadelphia's argument, this Court is not bound by the removal arguments raised in Defendant Chan's Notice of Removal to determine whether jurisdiction is proper in the Middle District of Pennsylvania. It is this Court's "duty to look beyond the pleadings and arrange the parties according to their sides in the dispute." *Indianapolis*, 314 U.S. at 69. Therefore, this Court may properly engage in an analysis of whether Adventure Sports is properly named as a defendant.

Philadelphia's claims against Defendants Yap and Chan are premised on the enforcement of contracts between Adventure Sports and Yap and Chan ("Adventure Sports Contracts"), contracts to which Philadelphia is not a party. (*See* Doc. 6-1 at 10-31). Despite being a named defendant, Philadelphia has not asserted any claims against Adventure Sports. (*See id.*).

After reviewing the Commercial General Liability Policy ("Policy") between Philadelphia and Adventure Sports, it is clear that Philadelphia's interests are not opposed to those of Adventure Sports'; instead in this instance, their interests are contractually structured to coincide, as shown by the terms of the Policy. The Policy reads:

> (c) You and any other involved insured must:
>
> …
>
>> (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

(Doc. 6-1 at 189). Another relevant section provides:

8

**Transfer of Rights Of Recovery Against Others To Us**
If the insured has rights to recover all or part of any payment we have made
under this Coverage Part, those rights are transferred to us. The insured must
do nothing after loss to impair them. At our request, the insured will bring "suit"
or transfer those rights to us and help us enforce them.

(*Id.* at 191 (emphasis in original)). Together, these provisions show that instead of being

antagonistic towards one another, Philadelphia and Adventure Sports are contractually

bound to have aligned interests. In fact, as the insured, Adventure Sports must "help

[Philadelphia] enforce" any rights to recover Adventure Sports may have, such as Adventure

Sports' alleged right to recover against Yap and Chan under the Adventure Sports

Contracts. Specifically, Adventure Sports has joined Philadelphia's Motion to Remand by

"incorporat[ing] by reference herein the Motion and supporting Memorandum of Law to

Remand filed by Philadelphia Indemnity Insurance Company" in its Brief in Support of

Philadelphia's Motion to Remand. (Doc. 27 at 1); *see Employers Ins.*, 905 F.2d at 46

(explaining that a court must determine whether a "collision of interests" exists "based on

the facts as they existed at the time the action was commenced," however, a court may

"look at subsequent pleadings and proceedings in a case to determine the position of the

parties, but only to the extent they shed light on the facts as they existed at the outset of the

litigation and on the actual interests of the parties." (internal citations and quotations

omitted)). Based on the contractual provisions in the Policy, there is no credible argument

to be made that the interests of Adventure Sports are more properly aligned with

Defendants Yap and Chan in the above-captioned action.

Given the above facts, it is clear that there is not the necessary "collision of interests" between Philadelphia and Adventure Sports to consider them antagonistic parties.  As stated in Yap's Opposition to the Motion to Remand, "the principal purpose of the lawsuit is to obtain a judgment that defendants Estate of Yap and/or Chan are required to defend and indemnify Philadelphia's insured, Adventure Sports." (Doc. 17 at 11).  To the extent that Adventure Sports has an interest in this action, it is directly related to whether Philadelphia will ultimately be successful in its request for declaratory relief and breach of contract claims asserted against Yap and Chan, since both Philadelphia and Adventure Sports would thereby benefit from a judgment favorable to Philadelphia in the instant action.

The interests of Adventure Sports and Philadelphia Indemnity are more properly aligned as co-plaintiffs and misaligned when Adventure Sports is a named defendant.  This is because Philadelphia asserts breaches of the Adventure Sports Contracts entered into by Yap and Chan where: 1) the contracts at issue are between Adventure Sports and Yap and Adventure Sports and Chan; (2) claims asserted by Philadelphia are to the benefit of Adventure Sports, not Yap and Chan, in that if Philadelphia is successful, the result is that Adventure Sports is entitled to indemnity for any liability for which they are determined to be responsible in the underlying tort action and to be so indemnified by Yap and Chan; and (3) the Court sees nothing in the pleadings and other relevant documents that suggests Philadelphia stands in privity with Yap and Chan and Adventure Sports and thus it is asserting Adventure Sports' contractual right to indemnity for its benefit, as well as that of

Adventure Sports, under the Adventure Sports Contracts. Nor is there any other basis under which Philadelphia is able to assert Adventure Sports' rights under the Adventure Sports Contracts with Yap and Chan. *See State Nat. Ins. Co., Inc. v. County of Bergen*, 2010 WL 23325, at *3 (D.N.J. Jan. 4, 2010) (realigning the parties because "the objectives and ultimate interests of both State National and North River have been adverse to those of the County Defendants as the insured.").

This Court finds that realignment is appropriate in this case, and Adventure Sports is properly considered a plaintiff in the above-captioned action for purposes of jurisdiction. With the realignment of Adventure Sports, it follows that Adventure Sports' Pennsylvania citizenship will not defeat complete diversity under 28 U.S.C. § 1332 and this Court has subject matter jurisdiction based on the diversity of the parties in the above-captioned action, and the Court will deny Philadelphia's Motion for Remand (Doc. 6) on these grounds.

Because the Court's decision to deny remand stems from the Court's decision to realign Adventure Sports as a party plaintiff, the Court need not address whether Adventure Sports is a nominal party whose citizenship should be ignored for jurisdictional purposes.[1]

---

[1] Although we need not resolve this issue in determining that realignment of Adventure Sports as a party plaintiff is required, the Court notes that Adventure Sports is a necessary, indispensable party to this action and is not properly considered a nominal party. Adventure Sports "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may, as a practical matter impair or impede the person's ability to protect the interest." FED. R. CIV. P. 19(a)(B)(i).

### ii. Declaratory Judgment Act

In its Motion to Remand, Philadelphia also argues that this Court should decline to exercise jurisdiction under the Declaratory Judgment Act because "this is a matter of state not federal law, and turns on the application of Pennsylvania law to the indemnity and hold harmless provisions at issue." (Doc. 7 at 13).

Under the Declaratory Judgment Act ("DJA"), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Federal district courts are granted significant discretion "to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). "Rather than being subject to the 'normal principle that federal courts should adjudicate claims within their jurisdiction,' district courts exercising DJA discretion are governed by 'considerations of practicality and wise judicial administration.'" *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014) (quoting *Wilton*, 515 U.S. at 288)). The Third Circuit has enumerated eight non-exhaustive factors for district courts to evaluate when considering whether to exercise DJA jurisdiction:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
> (2) the convenience of the parties;
> (3) the public interest in settlement of the uncertainty of obligation;
> (4) the availability and relative convenience of other remedies;

12

(5) a general policy of restraint when the same issues are pending in a state court;

(6) avoidance of duplicative litigation;

(7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

(8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer*, 751 F.3d at 146; *see also DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F.4th 192, 196-97 (3d Cir. 2021).

## *1. Factor One*

The first *Reifer* factor considers "the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy." *Reifer*, 751 F.3d at 146. This factor "captures whether a declaration would bring about a complete termination of the controversy between the parties and thereby avoid duplicative, piecemeal litigation." *DiAnoia's Eatery*, 10 F.4th at 205 (internal quotation and citation omitted). In this case, declaratory relief would settle the dispute regarding Yap and Chan's obligations arising out of the Adventure Sports Contracts. "We see no mention of any interested party that has not been joined, nor any predicate issue that would undermine the usefulness of a judgment interpreting the parties' obligations" under the Adventure Sports Contracts. *Id.* Therefore, the first factor weighs in favor of this Court exercising DJA jurisdiction.

## *2. Factor Two*

The second *Reifer* factor considers the convenience of the parties.  Plaintiff

Philadelphia argues that "[t]here is no credible basis to contend that the District Court is

more convenient that the Common Pleas Court sitting in Stroudsburg for the Adventure

Sports witnesses relevant to the contracts' execution and performance or its defense in the

Underlying Action" and also argues that "Ms. Chan, who resides in New York and elected to

contract with a local adventure concern in East Stroudsburg and embark on a canoe trip

from Marshall Creek, surely cannot contend that it would be easier for her to litigate this

matter in [the Middle District of Pennsylvania]."  (Doc. 7 at 12-13).  Defendant Chan, on the

other hand, contends that the convenience factor "is not a matter of miles to the courthouse

for each party or its witnesses but rather of a more neutral forum."  (Doc. 17 at 12).

This Court finds that no party will be inconvenienced having the above-captioned

case litigated in the Middle District of Pennsylvania.  Therefore, this factor weighs in favor of

the Court exercising DJA jurisdiction.

## *3. Factor Three*

The third *Reifer* factor asks courts to evaluate "the public interest in settlement of the

uncertainty of obligation."  *Reifer*, 751 F.3d at 146.  While the issues in this case may

involve public policy concerns, "the state law is firmly established," (Doc. 7 at 11), and this

Court is "well-equipped to answer questions of contract interpretation."  *Inspira Health*

*Network v. Am. Guar. & Liability Ins. Co.*, 2022 WL 833569, at *5 (D.N.J. March 21, 2022)

(citing *DiAnoia's Eatery*, 10 F.4th at 210).  The parties have not raised "any novel or

unsettled issues of state law that would establish a public interest in remanding the action to

state court." *Phila. Eagles Ltd. P'ship v. Factory Mut. Ins. Co.*, 2022 WL 874952, at *5

(E.D.Pa. March 24, 2022); *see also Greenwood Racing Inc. v. Am. Guar. & Liability Ins.*

*Co.*, 2021 WL 4902343, at *5 (E.D.Pa. Oct. 20, 2021) ("Greenwood fails to identify any truly

novel issue of Pennsylvania law.  Consequently, there is no reason for the Court to 'step

back' in favor of Pennsylvania courts." (quoting *Summy*, 234 F.3d 136)).  Accordingly, the

third *Reifer* factor weighs in favor of this Court exercising DJA discretion.

### 4. Factor Four

The fourth *Reifer* factor concerns the availability and relative convenience of other

remedies.  This factor is neutral because the parties have not indicated that there are other

remedies available that would be more convenient than the instant suit, nor can the Court

identify any other remedies that would resolve this suit.

### 5. Factor Five

The fifth *Reifer* factor reflects a "policy of restraint" and is "applicable only when the

'same issues' are pending in state court between the same parties, not when the 'same

issues' are merely the same legal questions pending in any state proceeding." *DiAnoia's*

*Eatery*, 10 F.4th at 206 (citing *Kelly v. Maxum Specialty Ins. Grp.*, 868 F.3d 274, 289 (3d

Cir. 2000); *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 497 (1942)).  "[T]he

absence of pending parallel proceedings militates significantly in favor of exercising

jurisdiction, although it alone does not require such an exercise." *Reifer*, 751 F.3d at 144.

"[A]s part of exercising sound and reasoned discretion, district courts declining jurisdiction

should be rigorous in ensuring themselves that the lack of pending parallel state

proceedings is outweighed by opposing factors." *Id.* In this case, there is no pending

parallel state court proceeding. Therefore, this factor weighs in favor of this Court

exercising DJA jurisdiction.

### 6.  Factor Six

Consideration of the sixth *Reifer* factor shows that there is no concern over

duplicative litigation in this matter; thus, this factor weighs in favor of this Court exercising

DJA discretion.

### 7.  Factor Seven

No party has expressed concern that the case was removed for an improper

purpose. *See Kelly*, 868 F.3d at 289 (finding that the seventh *Reifer* factor weighed in favor

of exercising DJA discretion because "there has been no concern expressed that removal of

the Declaratory Action was driven by an improper motive"). Therefore, the seventh *Reifer*

factor is neutral.

### 8.  Factor Eight

The eighth *Reifer* factor applies in the insurance context and asks whether "an

inherent conflict of interests [exists] between an insurer's duty to defend in a state court and

its attempt to characterize that suit in federal court as falling within the scope of a policy

exclusion." *Reifer*, 751 F.3d at 146. After realignment, this case contains no conflict between Philadelphia's duty to defend and claim to indemnity of Adventure Sports. Therefore, the concerns addressed by Factor Eight are absent here, and this factor weighs in favor of this Court's exercise of DJA jurisdiction.

### 9. *Guidance from* Summy

In addition to the eight factors enumerated in *Reifer*, the Court must also consider the guidance provided by *Summy* when deciding whether to exercise jurisdiction pursuant to the DJA in the insurance context. *Reifer*, 751 F.3d at 146-47; *DiAnoia's Eatery*, 10 F.4th at 197. While the instant case does not involve an interpretation of an insurance policy or application of Pennsylvania insurance law, the parties' identities (including an insured and insurer) makes insurance law tangentially related to the issues presented here as a result of the indemnity agreement between Philadelphia and Adventure Sports.

*Summy* explains that "[i]n order to maintain the proper relationship between federal and state courts, it is important that district courts 'step back' and allow the state courts the opportunity to resolve unsettled state law matters." *Summy*, 234 F.3d at 136. Furthermore, "the state's interest in resolving its own law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum. When the state law is firmly established, there would seem to be even less reason for the parties to resort to federal court." *Id.*

However, the Third Circuit has "cautioned that there can be no *per se* dismissal of insurance declaratory judgment actions, in part because '[f]ederal and state courts are equally capable of applying settled state law to a difficult set of facts.'" *DiAnoia's Eatery*, 10 F.4th at 197 (quoting *Reifer*, 751 at 147). Similarly, "[c]ourts should not abstain from cases that can be decided by 'applying familiar principles of insurance law to the language of the insurance policy.' ... Unless there are specific issues where Pennsylvania law is truly unsettled, this factor does not weigh against retaining jurisdiction." *Greenwood Racing Inc.*, 2021 WL 4902343, at *3 (quoting *Tumi, Inc. v. Factory Mut. Ins. Co.*, 2021 4170051, at *3 (D.N.J. Sept. 14, 2021)).

Here, Philadelphia agrees that the applicable state law is "firmly established," and Chan and Yap do not disagree. (*See* Doc. 7 at 11; Doc. 17 at 12). Indeed, the parties have not raised any novel issues of Pennsylvania law that may be at issue in this case. Although *Summy* explained that "[w]hen the state law is firmly established, there would seem to be even less reason for the parties to resort to the federal courts," 234 F.3d at 136, more recent decisions applying *Summy* and its progeny have expressed reluctance towards abstaining from exercising DJA jurisdiction where the applicable law is settled and does not involve "truly unsettled" state law. *See DiAnoia's Eatery*, 10 F.4th at 197; *Greenwood Racing Inc.*, 2021 WL 4902343, at *3; *Tumi*, 2021 4170051, at *3.

Philadelphia argues:

While this Court is perfectly capable of applying state law to the indemnity and hold harmless provisions at issue, so too can the Court in Monroe County,

18

> where those contracts were formed and performed, and which involve the
> circumstance of a local concessionaire's defense and indemnity arising out of
> a loss exclusively precipitated by the apparent negligence of two canoers –
> who expressly and unequivocally assumed the known risks, including death, of
> canoeing on the Delaware River.

(Doc. 7 at 12).  This argument in unavailing.  Philadelphia is correct that this Court is

"perfectly capable of applying state law" and that the Court of Common Pleas in Monroe

County is likewise capable.  However, federal courts regularly apply state law when sitting in

diversity because "'[t]he essence of diversity jurisdiction is that a federal court enforces

State law and State policy.'"  *DiAnoia's Eatery*, 10 F.4th at 209 (quoting *Beneficial Indus.*

*Loan Corp. v. Smith*, 170 F.2d 44, 53 (3d Cir. 1948)).  There is nothing novel or unsettled

about the law applicable to this case that would caution this Court against exercising

diversity jurisdiction.  This is especially true where, as here, there are no pending parallel

state court proceedings because this Court must ensure "that the lack of pending parallel

state proceedings is outweighed by opposing factors."  *See Reifer*, 751 F.3d at 144.

Therefore, an evaluation of the guidance promulgated in *Summy* and its progeny

weighs in favor of this Court retaining DJA jurisdiction.

\*     \*     \*

In total, six factors weigh in favor of this Court exercising jurisdiction, and two factors

that are neutral.  There are no *Reifer* factors that weigh in favor of this Court abstaining from

exercising its jurisdiction pursuant to the DJA.  Accordingly, because the factors weigh

heavily in favor of this Court exercising DJA jurisdiction, the Court will exercise DJA

jurisdiction over this case.  *See Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800, 813 (1976) ("abstention from the exercise of federal jurisdiction is the
exception, not the rule.").

### b.  Motion to Transfer

The next two motions are motions to transfer by Defendant Chan (Doc. 2) and
Defendant Yap (Doc. 8).  Defendant Yap's Motion "incorporates by reference as if fully set
forth herein at length, for purposes of this matter only, the facts and legal arguments set
forth in the Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404([a]) or in the Alternative
to Dismiss Pursuant to the Doctrine of *Forum Non Conveniens* filed on behalf of Defendant,
Virginia Chan." (Doc. 8 at 1-2).  Because the motions are substantively identical, the Court
will refer to Defendant Chan's and Defendant Yap's Motions to Transfer as Defendants'
Motion to Transfer for purposes of clarity.

Section 1404 provides that "[f]or the convenience of parties and witnesses, in the
interest of justice, a district court may transfer any civil action to any other district or division
where it might have been brought or to any district or division to which all parties have
consented."  28 U.S.C. § 1404(a); *see Neptune v. Carey*, 2021 WL 5632077, at *2 (3d Cir.
Dec. 1, 2021).  "Section 1404(a) is intended to place discretion in the district court to
adjudicate motions for transfer according to an 'individualized, case-by-case consideration
of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)
(quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  Although § 1404(a) allows for

flexibility, the burden of establishing the need for transfer still rests with the movant, *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995), and transfer "is not to be liberally granted." *Shuttle v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). "[U]nless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Id.* (internal quotation marks omitted).

In considering a motion to transfer, courts conduct a two-part analysis. *York Grp. Inc. v. Pontone*, 2014 WL 3735157, at *2 (W.D.Pa. 2014). "First, the court must decide whether the district to which the movant seeks to transfer the case has proper jurisdiction and venue, i.e., could the case have been brought in the transferee district in the first instance." *Id.* (quoting *Centimark Corp. v. Jacobsen*, 2011 WL 6000719, at *6 (W.D.Pa. 2011). "Second, the court applies a number of public and private factors to determine which forum is the most appropriate to consider the case." *Id.*

To determine whether venue is proper in the proposed transferee district, the Court looks to 28 U.S.C. § 1391. Section 1391 provides, in relevant part:

> (b) **Venue in General.** – A civil action may be brought in
>
>> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>>
>> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

28 U.S.C. § 1391(b)(1)-(2). Here, the properly named defendants, Yap and Chan, are not from the same state, as Yap resides in New Jersey and Chan resides in New York. (Doc. 3

at 2).  Because not "all defendants are residents of" the same state, Section 1391(b)(1)

does not establish proper venue in this case.

In this case, Section 1391(b)(2) governs venue.  Philadelphia's claims for declaratory

relief and breach of contract arise out of the Adventure Sports Contracts with Yap and

Chan.  Adventure Sports and Yap and Chan executed such contracts on May 25, 2018, in

Marshall Creek, Monroe County, Pennsylvania, which falls under the Middle District of

Pennsylvania.  (Doc. 3 at 1).  The claims involved in this action do not arise out of the

alleged canoeing accident; rather, the claims arise out of the terms of the Adventure Sports

Contracts.  Accordingly, "a substantial part of the events … giving rise to the claim[s]" took

place in the Middle District of Pennsylvania, which is also the only proper federal venue for

this case.  Thus, this case could not have originally been brought in the District of New

Jersey.

Chan and Yap argue that the underlying action pending in the District of New Jersey

arises out of the same set of facts as the above-captioned matter.  (Doc. 3 at 3).  This is

incorrect.  The underlying tort action arises out of the alleged canoeing accident in which

Mr. Yap died, and the instant action is a contract and declaratory judgment action arising

out of the Adventure Sports Contracts.  While it is true that the underlying action and the

instant matter are related, each case asserts different rights against different parties, and it

cannot be said that the cases are "identical" or "[arise] out of the same set of facts." (*Id.*).

22

As discussed above, this case could not have been brought in the District of New Jersey because a substantial part of the events giving rise to the instant claims took place in Middle District of Pennsylvania and Section 1404(a) only permits transfer "to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Because Philadelphia and Adventure Sports do not consent to transfer this case to the District of New Jersey and because this case could not have been brought in the District of New Jersey, this Court will deny Chan and Yap's Motion to Transfer Venue (Doc. 2; Doc. 8) to the District of New Jersey.

In its Motion to Transfer, Yap also argues in the alternative that "transfer would be appropriate under the *forum non conveniens* doctrine"

The Third Circuit has explained that

> [a]lthough a plaintiff's choice of forum should rarely be disturbed, "[w]hen an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case." *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 518, 524 (1947)).

*Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013). In deciding a *forum non conveniens* motion, the court's "ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster*, 330 U.S. at 527.

23

"A district court entertaining a forum non conveniens motion must first decide whether an adequate alternative forum exists to hear the case." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988).  As previously discussed, there is no alternative jurisdiction in which Plaintiff can file suit against Defendants because the only district court in which venue is properly laid is the Middle District of Pennsylvania.

Even if venue was proper in the District of New Jersey, which it is not, Yap and Chan have not demonstrated that, on balance, the Court should apply the *forum non conveniens* doctrine.  They argue "there is no reason to give deference to the choice of the federal Middle District of Pennsylvania (arising out of the original filing in Monroe County, Pennsylvania) as venue" because "the fact that the distance from plaintiff's place of business in Bala Cynwood, Pennsylvania outside Philadelphia to Scranton is actually further than the distance to the courthouse in Trenton, New Jersey." (Doc. 3 at 4).  However, the caselaw is clear that "the plaintiffs choice of forum should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant." *Lacey*, 862 F.2d at 43; *see also Kisano Trade*, 737 F.3d at 873.  Furthermore, Yap and Chan's argue that the underlying action in the District of New Jersey favors the application of *forum non conveniens* because "it would be more efficient to have the New Jersey Court that is already familiar with the underlying case consider plaintiff's claims in this related case." (Doc. 3 at 4-5).  This argument is unavailing because, as discussed above, the underlying action does not concern the Adventure Sports Contracts under which Philadelphia asserts its claims.  While

24

the District of New Jersey is familiar with a related set of facts in the underlying action, it cannot be said that that court is familiar with the specific contract provisions and claim for declaratory relief at issue in this case.

Accordingly, the Court will deny Chan and Yap's Motion to Dismiss via the *forum non conveniens* doctrine.

## IV.   CONCLUSION

For the aforementioned reasons, this Court will deny Chan's Motion to Transfer (Doc. 2), deny Philadelphia's Motion to Remand (Doc. 6), and deny Yap's Motion to Transfer (Doc. 8).  A separate Order will follow.


Robert D. Mariani
United States District Judge

25