## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PHILADELPHIA INDEMNITY      :     No. 3:21cv1236
INSURANCE COMPANY and       :
ADVENTURE SPORTS, INC.,        :     (Judge Munley)
            **Plaintiffs**          :
                                   :
     v.                             :
                                   :
TINA YAP, as Administratrix ad     :
Prosequendum of the ESTATE OF    :
CHEEYEN YAP, deceased, and       :
VIRGINIA CHAN,                    :
           **Defendants**          :

## MEMORANDUM

Before the court is a motion for partial judgment on the pleadings (Doc. 41) filed by Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") based on the terms of outdoor activity waivers. PIIC's insured, Plaintiff Adventure Sports, Inc. ("Adventure Sports") joins in the motion. (Doc. 45). Having been fully briefed, this matter is ripe for disposition.[1]

**Background**

This matter arises out of the death of Cheeyen Yap during a canoe trip in the Delaware Water Gap Recreation Area and the waiver forms he signed prior to the trip. (Doc. 1-5, Complaint). Cheeyen Yap's wife, Defendant Tina Yap, later

---

[1] The Honorable Robert D. Mariani transferred this case to the undersigned on November 7, 2023.

filed a personal injury action against the company that facilitated the trip, Adventure Sports, and the other person in the canoe, Defendant Virginia Chan.[2] (Id. ¶ 16 & Exh. C, Yap Complaint).  This declaratory judgment and breach of contract action followed.

As alleged by PIIC in this action, Cheeyen Yap and Defendant Chan chartered a canoe from Adventure Sports in East Stroudsburg, Pennsylvania on May 25, 2018.  (Id. ¶¶ 16-17, 19).  That day, Adventure Sports transported Cheeyen Yap and Defendant Chan to a launching point along the Delaware River.  (Id. ¶ 19).   While out on the river, Defendant Chan stood up in the canoe and caused it to capsize. (Id. ¶ 21).   Cheeyen Yap was not wearing a life jacket and drowned. (Id. ¶¶ 20-22).

Before they embarked, Cheeyen Yap and Defendant Chan signed two separate documents with Adventure Sports: 1) "Adventure Sports Liability Release & Rental Contract" with a subheading "Rental Contract" ("Rental Contract"); and 2) "Acknowledgement of Risks & Acceptance of Responsibility Release of Liability – Read Before Signing" ("Release of Liability").  (Id. ¶¶ 8-14,

---

[2] Yap v. Adventure Sports, 3:19cv6298 (D.N.J.).

17 & Exhs. A-B).[3]  The Rental Contract and Release of Liability contain indemnification clauses and exculpatory language.

Defendant Tina Yap alleges in the underlying negligence action that Adventure Sports held itself out as properly licensed and qualified by the National Park Service to organize boating trips within the Delaware Water Gap Recreation Area. (Id., Exh. C, Yap Complaint, Parties ¶ 2, Factual Background ¶¶ 1-8).  Per these averments, when the Delaware River reaches a depth of eight (8) feet or more, federal regulations required Adventure Sports to implement mandatory safety measures, including the mandatory wearing of life jackets during boating activities. (Id., Factual Background, ¶¶ 6-8).  The Delaware River allegedly measured at 8.10 feet on the date of the incident. (Id.)  Per a theory of liability in

---

[3] As attached to PIIC's complaint, Yap and Defendant Chan executed Adventure Sports' Rental Contract and Release of Liability using Smartwaiver software. (Doc. 1-5, Exhs. A-B). Yap e-signed the documents as "Chrid Yap" on May 25, 2018 at 17:11 UTC, (Id., Exh. A, p. 1), and Defendant Chan e-signed the documents on the same date at 17:13 UTC, (Id., Exh. B, p. 1).

Yap and Defendant Chan first had to initial the Rental Contract to indicate that they agreed to the late fee policy of $25.00 per boat. (Id., Exhs. A-B, p. 2).  They also had to sign the Rental Contract to "certify that [they] have read, understand and accept the terms and conditions stated on this contract." (Id., p. 3). The Rental Contract contains a provision permitting recovery of costs and attorneys' fees by Adventure Sports "in exercising any of its rights or remedies hereunder, or enforcing the terms, conditions, or provisions hereof." (Id. ¶ 6).

Following this first signature, Yap and Defendant Chan signed again under the separate Release of Liability, which contains the words "indemnify" and "hold harmless" as further discussed in this memorandum.  The second signature follows language in bold, underlined capital letters that they read "this release of liability and assumption of risk agreement, fully understand its terms, understand that [they] have given up substantial rights by signing it and sign it freely and voluntarily with out [sic] any inducement." (Id., p. 3-4).

3

that case, Adventure Sports violated the regulations by failing to ensure that Cheeyen Yap and Defendant Chan possessed life jackets and knew that the use of life jackets was mandatory. [4] (Id., Factual Background ¶¶ 7-8, First Count, ¶¶ 3-4, Second Count, ¶¶ 2-3).

Returning to the averments in this action, PIIC insured Adventure Sports under a commercial general liability policy. (Doc. 1-5, Complaint, ¶¶ 24-28 & Exh. D).  PIIC alleges it has incurred costs defending Adventure Sports in the underlying negligence action. (Id. ¶¶ 29-31).  Moreover, PIIC's insurance contract with Adventure Sports provides PIIC with subrogation rights. (Id. ¶¶ 31-32). Standing in the shoes of Adventure Sports in this action, PIIC now seeks indemnity -- compensation for defense costs -- based on the terms found within Adventure Sports' Rental Contract and Release of Liability.  Counts I and II of the complaint seek a declaration that the defendants are obligated to defend and indemnify Adventure Sports in the underlying action and reimburse PIIC for all legal fees, costs, and expenses incurred. (Id. ¶¶ 51-70).  Counts III and IV assert breach of contract claims for recovery of damages in the form of costs paid to date by PIIC in defending against the negligence claims in the underlying action. (Id. ¶¶ 70-100).

---

[4] The underlying action seeks damages in accordance with New Jersey law.  Defendant Tina Yap did not allege gross negligence or recklessness by Adventure Sports.  She does not seek the award of punitive damages.

PIIC initiated this action in the Monroe County Court of Common Pleas on June 21, 2021. (Doc. 1-5).  Defendants removed this matter on July 14, 2021 based on the parties' diversity jurisdiction.[5]  (Doc. 1).  After all parties answered the complaint, PIIC filed the instant motion for partial judgment on the pleadings regarding Counts I and II.  (Doc. 41).  The parties have fully briefed their respective positions bringing this case to its present posture.

**Jurisdiction**

The court has jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332.  PIIC and Adventure Sports are alleged to be Pennsylvania corporations with principal places of business in Pennsylvania. (Doc. 1-5, Complaint, ¶¶ 1, 4).  Defendant Tina Yap is a citizen of New Jersey and Defendant Chan is a citizen of New York. (Id. ¶¶ 2-3).  Additionally, the amount in controversy exceeded $75,000 at the time this matter was commenced.  Because complete diversity of citizenship exists among the parties and the amount in controversy exceeded $75,000 at the commencement of the action, the court has jurisdiction over this case.  See 28 U.S.C. § 1332 ("district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different

---

[5] Defendant Chan removed this matter. (Doc. 1).  Defendant Tina Yap consented to removal. (Doc. 13).  PIIC initially named Adventure Sports as a defendant. (Doc. 1-5).  Judge Mariani later realigned this action to make Adventure Sports a party plaintiff. (Doc. 29).

states[.]"); 28 U.S.C. § 1441 (A defendant can generally move a state court civil action to federal court if the federal court would have had original jurisdiction to address the matter pursuant to the diversity jurisdiction statute).  As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case.  Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tomkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Federal Rule of Civil Procedure 12(c) provides, "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).  Under Rule 12(c), "the trial court must view the facts in the pleadings in the light most favorable to plaintiff and must grant the motion only if the moving party establishes that no material issues of fact remains and that it is entitled to judgment as a matter of law." Shelly v. Johns-Manville Corp., 798 F.2d 93, 97, n. 4 (3d Cir. 1986).  "[I]n deciding a motion for judgment on the pleadings, a court may only consider the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Wolfington v. Reconstructive Orthopaedic Assocs. II PC, 935 F.3d 187, 195 (3d Cir. 2019)(citation and internal quotation marks omitted).

6

**Discussion**

PIIC's motion for partial judgment on the pleadings is based upon its insurance contract with Adventure Sports and the Rental Contracts and Releases of Liability signed by Cheeyen Yap and Defendant Chan with Adventure Sports on the date of the canoe trip. PIIC argues that the agreements are clear and unambiguous and thus require indemnification. The defendants counter that the existence of material issues of fact regarding enforcement of the indemnification provisions in the agreements and policy considerations preclude judgment as a matter of law.

**1. Interpretation of the Agreements**

The parties agree that Pennsylvania law applies. "In interpreting the terms of a contract, the cardinal rule followed by courts is to ascertain the intent of the contracting parties." Com. ex rel. Kane v. UPMC, 129 A.3d 441, 463 (Pa. 2015)(citing Lesko v. Frankford Hosp.–Bucks Cty.,15 A.3d 337, 342 (Pa. 2011). "If the contractual terms are clear and unambiguous on their face, then such terms are deemed to be the best reflection of the intent of the parties." Id. (citing Kripp v. Kripp, 849 A.2d 1159, 1162 (Pa. 2004). If, however, the contractual terms are ambiguous, meaning "they are subject to more than one reasonable interpretation when applied to a particular set of facts[,]" then the resort to extrinsic evidence to ascertain their meaning is proper. Id. (citations and internal

7

quotation marks omitted).  "While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact." Commonwealth by Shapiro v. UPMC, 208 A.3d 898, 910 (Pa. 2019)(quoting Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 468-69 (Pa. 2006))(emphasis removed).

The language relied upon by PIIC appears in two different electronic documents signed by Cheeyen Yap and Defendant Chan.  Paragraph 4 of the Release of Liability contains the words "indemnify" and "hold harmless" and Paragraph 6 of the Rental Contract contains provisions for the recovery of costs and attorneys' fees by Adventure Sports.  Under Pennsylvania jurisprudence, "[i]f contracting parties choose, they may express their agreement in one or more writings and, in such circumstances, the several documents are to be interpreted together, each one contributing (to the extent of its worth) to the ascertainment of the true intent of the parties." Int'l Milling Co. v. Hachmeister, Inc., 110 A.2d 186, 191 (Pa. 1955); see also Kroblin Refrigerated Xpress, Inc. v. Pitterich, 805 F.2d 96, 107 (3d Cir. 1986)(citations omitted)(applying Pennsylvania law)("It is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, each one contributing to the ascertainment of the true intent of the parties.").

Here, neither the Rental Contracts nor the Releases of Liability explicitly refer to the other, but they were each signed by Cheeyen Yap and Defendant Chan on the same date and time.  Each document thus contributes "to the extent of its worth" in ascertaining the true intent of the parties.  Int'l Milling Co., 380 Pa. at 417-418.

## 2. The Waiver Forms

In relation to PIIC's indemnification rights through the Adventure Sports waiver forms, the words "indemnify" and "hold harmless" appear only once in the agreements, within Paragraph 4 of the Release of Liability. (Doc. 1-5, Complaint, Exhs. A-B).[6]

The Release of Liability provides, in relevant part:

> **ACKNOWLEDGEMENT OF RISKS & ACCEPTANCE OF RESPONSIBILITY**
> **RELEASE OF LIABILITY – READ BEFORE SIGNING**
>
> In consideration of being allowed to participate in any way in the Adventure Sports program, its related event and activities,
> I the undersigned (BELOW), acknowledge, appreciate and agree that: . . .

---

[6] The Rental Contract contains a separate indemnity provision: "6. Lessee shall pay all costs and expenses, including attorney's fees, incurred by Adventure Sports in exercising any of its rights or remedies **hereunder,** or enforcing the terms, conditions, or provisions **hereof**." (Doc. 1-5, Complaint, Exhs. A-B)(emphasis added).  The terms as noted in bold are ambiguous based on the signature line separating the Rental Contract from the Release of Liability.  One reasonable interpretation of these terms would limit the application of this paragraph solely to the Rental Contract as it deals with property damage and the recovery of property-related fees.

4. I, for myself and on behalf of my heirs, assigns, personal representatives and the next of kin , HEREBY RELEASE, INDEMNIFY, AND HOLD HARMLESS, ADVENTURE SPORTS, their officers, officials, agents and/or employees, other participants, sponsoring agencies, sponsors, advertisers, and if applicable, owner and lessor of premises used for this activity ("releasees"), WITH RESPECT TO ANY AND ALL INJURY, DISABILITY, DEATH, or loss or damage to person or property associated with my presence or participation, WHETHER ARISING FROM THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE, to the fullest extent permitted by law.

**I HAVE FULLY READ THIS RELEASE OF LIABILITY AND ASSUMPTION OF RISK AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT, AND SIGN IT FREELY AND VOLUNTARILY WITH OUT ANY INDUCEMENT** [sic]

(Id.)

In Pennsylvania, an indemnity agreement that covers loss due to the indemnitee's own negligence must be clear and unequivocal. Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 371 (3d Cir. 2001) (citing Perry v. Payne, 66 A. 553 (Pa. 1907); Ruzzi v. Butler Petroleum Co., 588 A.2d 1, 5 (Pa. 1991)).[7]

---

[7] Named for these two cited cases, "the Perry-Ruzzi rule" is synonymous with the requirement in Pennsylvania that a contract of indemnity should not be construed to indemnify against the negligence of the indemnitee unless so expressed in unequivocal terms. Hershey Foods Corp. v. Gen. Elec. Serv. Co., 619 A.2d 285, 288 (Pa. Super. Ct. 1992). "The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. No inference from words of

PIIC argues that the indemnification obligation set forth in Adventure Sports' Release of Liability is clear and unequivocal and must be enforced. (Doc. 42, p. 11-15).  Defendants argue that this language violates public policy based on Adventure Sports' alleged failure to ensure that Cheeyen Yap wore a life jacket according to federal regulations. (Doc. 47, p. 6-7; Doc. 48, p. 5-6).  In response, PIIC counters that this motion is about indemnification obligations not public policy arguments more suited for a dispute over an exculpatory provision. (Doc. 49, p. 7-8).  The court finds the defendants' arguments more persuasive.

In their simplest forms, an exculpatory clause "deprives one contracting party of a right to recover for damages suffered through the negligence of the other contracting party[,]", while an indemnity clause, "effects a change in the person who ultimately has to pay the damages[.]" Dilks v. Flohr Chevrolet, Inc., 192 A.2d 682, 687, n. 11 (Pa. 1963).  The Supreme Court of Pennsylvania has noted that "there is a substantial kinship between both types of contracts[.]" Id.

In Paragraph 4 of the Release of Liability, that kinship is on full display. That paragraph deprives Cheeyen Yap's estate of rights to recover damages for his death due to Adventure Sports' negligence in the same sentence shifting payment of any damages from Adventure Sports to Cheeyan Yap's estate (and

---

general import can establish it." Perry, 66 A. at 557; see also Greer v. City of Philadelphia, 795 A.2d 376, 380 (Pa. 2002).

Defendant Chan).  Accordingly, the indemnification language relied upon by PIIC is inextricably connected with exculpatory language and the defendants' public policy arguments about exculpatory clauses must be considered in tandem with this indemnity clause.  See e.g. Warren City Lines, Inc. v. United Ref. Co., 287 A.2d 149, 150-54 & n. 1 (Pa. Super. Ct. 1971)(finding a combined exculpatory and indemnification clause invalid where it released a party for acts of negligence premised on a violation of state regulations).  Furthermore, "[t]he test used to determine the enforceability of exculpatory and indemnity provisions is the same." Valhal Corp. v. Sullivan Associates, Inc., 44 F.3d 195, 202 (3d Cir. 1995)(citing Dilks, 192 A.2d at 687, n. 11).

Under Pennsylvania law, "[a] valid exculpatory contract fully immunizes a person or entity from any consequences of its negligence." Degliomini v. ESM Prods., Inc., 253 A.3d 226, 238 (Pa. 2021)(citation omitted).  As summarized:

> It is generally accepted that an exculpatory clause is valid where three conditions are met. First, the clause must not contravene public policy. Secondly, the contract must be between persons relating entirely to their own private affairs and thirdly, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion. . .

Chepkevich v. Hidden Valley Resort, L.P., 607 Pa. 1, 26, 2 A.3d 1174, 1189 (2010)(citations omitted and formatting modified).

"An exculpatory contract contravenes public policy when it violates an obvious, 'overriding public policy from legal precedents, governmental practice,

or obvious ethical or moral standards.' " Degliomini, 253 A.3d at 238 (quoting

Tayar v. Camelback Ski Corp., Inc., 47 A.3d 1190, 1199 (Pa. 2012)).   An

exculpatory contract withstands a challenge based on public policy if it does not

contravene any policy of the law, that is, if it is not a matter of interest to the

public or to the state. Id. (citations omitted).

> Furthermore:

>> An otherwise valid contract will not be voided in favor of a vague public policy goal; rather, [the Supreme Court of Pennsylvania] requires that to support such a heavy-handed result, the alleged public policy must be:

>>> ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. ... [T]here must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy[.] ... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

Id. at 238 (quoting Williams v. GEICO Gov't Emps. Ins. Co., 32 A.3d 1195, 1200 (Pa. 2011)).

An exculpatory contract is void as against public policy in Pennsylvania if it

immunizes a party from liability for their grossly negligent conduct, Feleccia v.

Lackawanna Coll., 215 A.3d 3, 20 (Pa. 2019), reckless conduct, Tayar, 47 A.3d

13

at 1203, or "where it immunizes a party from the consequences of violating a statute or regulation intended to preserve health or safety[,]" Degliomini, 253 A.3d at 239.

Neither gross negligence nor reckless conduct are pled in the underlying action, but, in that case, Defendant Tina Yap alleges that Adventure Sports violated federal regulations intended to preserve health and safety. As averred, the accident occurred on the Delaware River within the Delaware River National Recreation Area between Smithfield Beach and Kittatinny Point. (Doc. 1-5, Exh. C., Yap Complaint, Jurisdiction and Venue ¶ 3, Factual Background ¶ 5). This area is administered by the National Park Service under the United States Department of Interior. See 16 U.S.C. § 460o, *et seq.*

The Department of Interior is authorized to prescribe federal regulations concerning boating or other water activities within National Park System units. 54 U.S.C.A. § 100751(b). By regulation, the National Park Service has adopted the regulations of the United States Coast Guard ("USCG") regarding personal floatation devices ("PFD").[8]  36 C.F.R. § 3.7. USCG regulations provide that no

---

[8] PIIC refers to PFDs as life jackets in the complaint.  (Doc. 1-5, ¶ 20).

person may use a recreational vessel[9] unless at least one wearable PFD[10] is on board for each person and those PFDs are used in accordance with the requirements of the approval label and owner's manual, if applicable. 33 C.F.R. § 175.15.

Additionally, pursuant to these regulations, the superintendent of a National Park Service unit "may require that a PFD be worn or carried on designated waters, at designated times and/or during designated water based activities[.]" 36 C.F.R. § 3.7.  As such, the superintendent of the Delaware Water Gap Recreation Area has issued a compendium of park-specific regulations, including a requirement that PFDs are mandatory "during a period of high water, 8 feet or above, measured at the Montague River Gauge, for each individual onboard a vessel which is underway, on, or in the waters of the Delaware River, within the park[.]" (Doc. 47-2, ECF p. 45 (setting forth the Superintendent's public use limits under 36 C.F.R. § 1.5(a)(2))).

As alleged in the underlying action, the Delaware River measured at 8.10 feet on the date of the incident and Cheeyen Yap was not wearing a PFD. (Doc. 1-5, Exh. C, Yap Complaint, Factual Background, ¶¶ 6-9).  Defendant Tina Yap

---

[9] "Recreational vessel means any vessel being manufactured or operated primarily for pleasure, or leased, rented, or chartered to another for the latter's pleasure." 33 C.F.R. § 175.3.

[10] "Wearable PFD means a PFD that is intended to be worn or otherwise attached to the body." 33 C.F.R. § 175.13.

avers that Adventure Sports held itself out as licensed by the National Park Service and bears duties and responsibilities to ensure the use of PFDs in compliance with federal regulations. (Id. ¶¶ 1, 4, 6-9).

With only the pleadings and contracts to consider at this stage, the court cannot rule out that Adventure Sports may be found negligent in the underlying action based on the alleged regulatory violations.  Under those circumstances, the exculpatory language in Adventure Sports' Rental Contract and Release of Liability may be declared partially or wholly invalid on public policy grounds depending on the factual record as it develops there.  That same exculpatory language in the Release of Liability provides for indemnity and thus the same material issues of fact exist in this contract-based action.  Accordingly, PIIC's motion for partial judgment on the pleadings will be denied.

**Conclusion**

For the above reasons, PIIC's motion for partial judgment on the pleadings is denied.  An appropriate order follows.

Date: 3/27/24

JUDGE JULIA K. MUNLEY
United States District Court